## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOHN L. CONLEY,
     *Plaintiff(s)*,

          v.                                      No. 3:17-cv-322 (VAB)

ZACHARY BRYSGEL, CORRECTION
OFFICER ET AL.,
     *Defendant(s)*.

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

John L. Conley ("Plaintiff" or "Conley") has sued Correction Officer Zachary Brysgel ("Officer Brysgel") and Captain Ronald Black ("Captain Black") (collectively "Defendants") in their individual and official capacities. Compl., ECF No. 1 (Feb. 22, 2017).

Mr. Conley alleges that Officer Brysgel and Captain Black violated his Eighth Amendment rights: Officer Brysgel, by allegedly using excessive force against him in the recreation yard of the correctional facility; and Captain Black, by allegedly failing to take appropriate measures to prevent Officer Byrsgel's allegedly excessive use of force, after being made aware of potential harm from him.

Both Officer Brysgel and Captain Black have moved for summary judgment on Mr. Conley's Eighth Amendment claims. Mot. for Summ. J. ("Defs.' Mot."), ECF No. 86 (Dec. 6, 2019).

For the following reasons, Defendants' motion for summary judgment is **GRANTED.**

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

A.      **Factual Background[1]**

Both Correction Officer Brysgel and Captain Black are assigned to the MacDougall-Walker Correction Institution. Defendants' Local Rule 56(a)(1) Statement of Material Undisputed Facts ("Defs.' SMF"), ECF No. 86-1 ¶ 1-2 (Dec. 6, 2019).

On August 1, 2016, Mr. Conley allegedly asked Captain Black to speak with Officer Brysgel regarding that officer's alleged harassment of him: a strip search and racial remarks. *Id.* at 12 ¶ 6. Mr. Conley asked that "Captain Black speak with Officer Brysgel and/or remove him from the block to secure plaintiff's future safety." *Id.* Captain Black allegedly said he would look into it, but allegedly did nothing. *Id.*

On September 15, 2016, Conley again allegedly requested that "Captain Black speak with Officer Brysgel or remove him from the block." *Id.* at 12 ¶ 7. He alleges that Officer Brysgel's harassment continued after the incident and that Captain Black still did nothing. *Id.* at 13 ¶¶ 8–9.

More than ten days later, on September 26, 2016, Officer Brysgel had been assigned to work as the B-1 housing unit recreation officer at the Walker Building, *id.* ¶ 3, where the Security Risk Group members are placed. *Id.* ¶ 4. A Security Risk Group, designated by the Commissioner of Corrections, is comprised of inmates that jeopardize the safety of the public, staff, or other inmates and/or the security and order of the facility. *Id.* ¶ 6. Inmates assigned to Phase One of the Security Risk Group program are kept in handcuffs for all out of cell movement and are handcuffed behind their back for recreation. *Id.* ¶ 7. Phase One inmates are subjected to strip searches. *Id.* ¶ 8. Phase One of the program requires that inmates from the same Security Risk Group be housed together, kept separate from inmates belonging to other Security

---

[1] Unless otherwise noted, Plaintiff has admitted the material facts.

Risk Groups, and attend recreation in small groups on inmates belonging to the same Security Risk Group. *Id.* ¶ 9–10. Officers are trained to stabilize a combative inmate by bringing them into contact with a stable surface, usually the floor or a wall. *Id.* ¶ 29.

On the morning of September 26, 2016, Mr. Conley had been assigned to Phase One of the Security Risk Group Program. *Id.* ¶ 5. On that same morning, at approximately 9:00 a.m., Phase One inmates reported to the recreation yard for their recreation period. *Id.* ¶ 11. These inmates were all members of the Security Risk Group known as the Bloods. *Id.* ¶ 12. Each inmate had their hands handcuffed behind their back. *Id.* ¶ 13. The inmates were at times gathered in a group and appeared to be talking to each other. *Id.* ¶ 14. Inmates would occasionally wander from the group to walk around, gather in smaller groups, or to watch the activity in other areas of the recreation yards, all typical behavior. *Id.* ¶ 15-16.

While the inmates were in the recreation yard, Officer Brysgel noticed that one inmate had knocked another inmate, Hayes, to the ground. *Id.* ¶ 17. Mr. Conley and the other inmate allegedly repeatedly kicked and stomped Hayes in the head and upper body, while he was on the ground. *Id.* ¶ 18. Mr. Hayes managed to get up from the ground, but was quickly knocked down by Conley and the other inmate. *Id.* ¶ 20. Mr. Conley and the other inmate continued to kick Mr. Hayes, while he was on the ground. *Id.* ¶ 21. All three inmates had their hands handcuffed behind their back during this time. *Id.* ¶ 22. Mr. Conley allegedly never heard Officer Brysgel shout any commands and denies that Officer Brysgel shouted any commands during the altercation. Pl.'s Local Rule 56(a)2 Statement of Facts in Opposition, ECF No. 110-2 ¶¶ 23–24 (May 15, 2020) ("Pl.'s SMF").

Officer Brysgel immediately summoned other officers to the scene and allegedly ordered the inmates to stop fighting and to get down on the ground. Defs.' SMF ¶ 23. Mr. Conley and the

other inmate allegedly ignored Officer Brysgel's direct orders and continued to kick Mr. Hayes. *Id.* ¶ 24. Mr. Hayes appeared unable to fight back or defend himself. *Id.* ¶ 25; Pl.'s SMF ¶ 25 (denying "to the extent that the video submitted by Defendants speaks for itself"). Several other inmates were in the recreation yard at this time, but did not appear to be involved in the alleged assault. *Id.* ¶ 26. Seconds later, when more staff arrived, officers entered the recreation yard. *Id.* ¶ 27; Pl.'s SMF ¶ 27 (denying "to the extent that the video submitted by Defendants speaks for itself'"). Officer Brysgel continued giving verbal direction to the inmates to stop fighting, but Mr. Conley and the other inmate allegedly continued to kick and stomp Mr. Hayes. *Id.* ¶ 28. Mr. Conley again denies that Officer Brysgel gave any verbal commands. Pl.'s SMF ¶ 28.

Officer Brysgel attempted to secure Mr. Conley, but Mr. Conley became physically resistant and prevented himself from being secured to a stable surface. Defs.' SMF ¶ 30. Mr. Conley counters that, throughout the course of the incident, he was never physically resisting, and, when Officer Brysgel tackled him, he "was already at a stable surface and not an immediate danger to anyone." Pl.'s SMF ¶ 30. Officer Brysgel was initially trying to move Mr. Conley away from Mr. Hayes to bring an end to the assault. Defs.' SMF ¶ 31.

Mr. Conley recalls that Hayes had already left the recreation area, when Officer Brysgel tackled him. Pl.'s SMF ¶ 31. Officer Brysgel continued to order Mr. Conley to get down on the ground, but Mr. Conley ignored his orders and continued to offer resistance. Defs.' SMF ¶ 32; Pl.'s SMF ¶ 32 (again denying Officer Brysgel ever gave him verbal commands). Mr. Conley allegedly had planted his feet and pulled in the opposite direction, which prevented Officer Brysgel from bringing him to the ground. *Id.* ¶ 33. Mr. Conley claimed to have already been near a stable surface, the wall, "had nowhere to go, and was not a threat to anyone in the area." Pl.'s

SMF ¶ 33. To the extent his feet were planted, Conley claimed to have braced himself because he did not have use of his hands. *Id.*

Officer Brysgel finally brought Mr. Conley to the ground. Defs.' SMF ¶ 34; Pl.'s SMF ¶ 34 (Conley allegedly was "violently forced to the ground striking his head on the concrete and also sustaining injuries to his wrists which were in handcuffs behind his back."). Mr. Conley allegedly sustained an abrasion to his head, when Officer Brysgel brought him to the ground. *Id.* ¶ 47. The abrasion allegedly required sutures. *Id.* Officer Brysgel sustained an abrasion to his arm, when he brought Mr. Conley to the ground. *Id.* ¶ 48.

Based on the videotape footage, the entire incident, from the time Mr. Conley and the other inmate began attacking Mr. Hayes to the time Officer Brysgel brought Mr. Conley to the ground, took less than thirty seconds. Defs.' Ex. C & D, ECF No. 86-5 at 11:40–12:20 (Dec. 6, 2019) ("Video Footage"). The videotape footage also shows Mr. Conley facing Officer Brysgel, rather than the wall, when Officer Brysgel came to prevent Mr. Hayes from being attacked any further. *Id.*

When Captain Black arrived on the scene, the three inmates had been separated by staff and secured to the ground. *Id.* ¶ 35. Captain Black directed officers to escort the assailants to medical units and participated in inmate Hayes' escort to the medical unit. *Id.* ¶ 36. Officer Brysgel secured Mr. Conley's left side and escorted him to the B unit medical room where medical staff treated him. *Id.* ¶ 37. Officer Brysgel also received treatment in the medical unit for the abrasion to his arm. *Id.* ¶ 48. Mr. Conley allegedly smiled as medical staff treated him. *Id.* ¶ 38. Mr. Conley claimed to have been "in shock as to what just happened to him and he did not know how to react." Pl.'s SMF ¶ 38. He "maintained [this] appearance to ensure he was not assaulted again." *Id.*

While in the medical room, Mr. Conley allegedly stated that "I'm good with Brysgel, Brysgel's alright" and "I know he had to do his job." Defs.' SMF ¶ 39. When Officer Brysgel stated to Mr. Conley that Mr. Conley was "tough to get on the ground," Mr. Conley replied "I wasn't trying to get to the ground. I was trying to go to the wall. I know you have to do your job. I'm f*****g with you Brysgel. Brysgel alright." *Id.* ¶ 40. Mr. Conley claimed that Officer Brysgel, who had just "violently tackl[ed]" him, was near him when he was answering questions. Pl.'s SMF ¶ 39. Mr. Conley allegedly, in shock and out of fear, "answered whatever questions were asked of him the way that [he] thought Officer Brysgel wanted them answered." *Id.* ¶ 40.

Captain Black later entered the medical room where Mr. Conley was being treated. *Id.* ¶ 41. Captain Black asked Mr. Conley how he hurt his head and Conley replied that "Brysgel did it." *Id.* ¶ 43. Captain Black asked Mr. Conley if staff had tried to take him down to the ground and he replied "yeah." *Id.* ¶ 44; Pl.'s SMF ¶ 44 (again noting that Officer Brysgel was standing next to him when he answered these questions, that he was still in shock, and answering questions the way he perceived Officer Brysgel wanted him to answer them). APRN La France then asked Mr. Conley, "You were standing up and Brysgel just walked up to you and knocked you over?" *Id.* ¶ 45. Mr. Conley replied "no" and shook his head from side to side. *Id.* ¶ 46; Pl.'s SMF ¶ 45 (denying again because of Officer Brysgel's presence while he was answering questions).

The medical staff gave Mr. Conley stitches, a bandage, and some Tylenol. Pl.'s SMF at 11 ¶ 1. He allegedly suffered headaches after the assault and returned to his cell embarrassed and "in excruciating pain[.]" *Id.* at 12 ¶ 2. No officers allegedly checked on him following his injury. *Id.* at 12 ¶ 3. He allegedly continued to suffer pain including "chronic headaches, memory loss, and arthritis in his hands and wrists as a result of Officer Brysgel's actions." *Id.* at 12 ¶ 4. In his

view, had Captain Black taken his prior reports of Officer Brysgel's harassment seriously, this incident would not have happened. *Id.* at 12 ¶ 5.

### B.   Procedural History

On February 22, 2017, Mr. Conley, an inmate representing himself *pro se*, filed this Complaint. Compl., ECF No. 1 (Feb. 22, 2017).

On May 9, 2017, the Court issued its Initial Review Order. Initial Review Order, ECF No. 7 (May 9, 2017) ("IRO"). The Court dismissed Mr. Conley's official capacity claims and his claims under 42 U.S.C. §§ 1985 and 1986, IRO at 3–4, 5–6, but allowed Mr. Conley's Eighth Amendment claims of excessive force and deliberate indifference to safety against Officer Brysgel and failure to protect and deliberate indifference to safety against Captain Black to proceed, *id.* at 5–6.

On August 28, 2017, Officer Brysgel and Captain Black filed their Answer and raised seven affirmative defenses. Answer, ECF No. 17 (Aug. 28, 2017).

On August 22, 2018, Mr. Conley moved for summary judgment on his Eighth Amendment claims. Pl.'s Mot. for Summ. J., ECF No. 44 (Aug. 22, 2018).

On August 28, 2018, Officer Brysgel and Captain Black filed an objection to Mr. Conley's motion for summary judgment. Defs.' Obj. to Mot. for Summ. J., ECF No. 45 (Aug. 28, 2018).

On October 26, 2018, the Court denied Mr. Conley's motion for summary judgment because the motion was untimely and because Mr. Conley failed to conform to the requirements of Federal Rule of Civil Procedure 56(a) and Local Civil Rule 56(a)(1). Order, ECF No. 46 at 1 (Oct. 26, 2018).

On December 6, 2019, Officer Brysgel and Captain Black moved for summary judgment

on Conley's Eighth Amendment claims. Defs.' Mot., ECF No. 86 (Dec. 6, 2019).

On May 15, 2020, Mr. Conley replied to the motion for summary judgment. Pl.'s Opp'n, ECF No. 110 (May 15, 2020).

On June 16, 2020, the Court held a telephonic motion hearing. Minute Entry, ECF No. 117 (June 16, 2020).

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

### III.   DISCUSSION

Defendants have moved for summary judgment, arguing that there are no genuine issues of material fact regarding Mr. Conley's Eighth Amendment claims or alternatively, that they are entitled to dismissal of these claims because of qualified immunity.

#### A.   The Excessive Force Claim

The Supreme Court's decision in *Hudson v. McMillian*, 503 U.S. 1 (1992), established the standard for determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances. When an inmate claims that excessive force has been used against him by a prison official, he bears the burden of establishing both an objective and subjective component to his claim. *Hudson*, 503 U.S. at 20; *see also Romano v. Howarth*, 998 F.2d 101, 104–05 (2d Cir. 1993) ("The Supreme Court has discerned that an Eighth Amendment claim comprises both an objective and subjective component.").

To meet the objective component, a plaintiff must allege that a defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). The extent of a plaintiff's injuries as a result of a defendant's conduct is not a factor in determining the objective component. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (noting the "core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances).

The subjective component requires a plaintiff to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley*

*v. Albers*, 475 U.S. 312, 329–21 (1986)). The court considers factors including "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

Officer Brysgel argues that his "only intention when entering the recreation yard was to stop the assault on [another] inmate by separat[ing] him from his assailants[,]" including Mr. Conley. Defs.' Mem., ECF No. 86-1 at 13 (Dec. 6, 2019) ("Defs.' Mem."). He intended to direct Mr. Conley to the ground, after Mr. Conley had "actively resisted his efforts and continued to ignore his verbal orders." *Id.* Officer Brysgel argues that he "used only the amount of force necessary to stabilize [Mr. Conley]." *Id.*

In his view, if Mr. Conley had followed his verbal commands "to stop fighting and get on the ground," no force at all would have been necessary. *Id.* at 14. Officer Brysgel argues that "[a]n assaultive inmate who must be restrained does not get to pick the surface on which he is stabilized." *Id.* Officer Brysgel continues that his "actions were not serious enough to have violated contemporary standards of decency . . . [and] the force used . . . was applied in a good-faith effort to restore discipline . . . ." *Id.* at 15–16.

Mr. Conley argues that the video footage demonstrates that Mr. Conley "was already at a stable surface in which he could be secured[,]" "[t]here were no other inmates in the area", and Officer "Brysgel [g]ave no warning upon entering the rec yard that he was going to tackle the plaintiff." CITE.

The Court disagrees.

"[T]he alleged wrongdoing was [not] objectively harmful enough to establish a constitutional violation." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation

marks omitted) (quoting *Hudson*, 503 U.S. at 8). The videotape footage shows Officer Brysgel moving towards Mr. Conley, who was facing the same direction where Mr. Hayes, the inmate Mr. Conley had assaulted, had fled. Video Footage at 11:40. Officer Brysgel then stopped Mr. Conley from moving further in that direction by putting him on the ground. *Id.*

While Mr. Conley argues otherwise, as the Supreme Court noted years ago: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of a ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). As a result, on this record, a reasonable jury could only conclude that Officer Brysgel used only as much force as was necessary to prevent further harm to another inmate.

Accordingly, there is no genuine issue of material fact as to whether Mr. Conley has satisfied his burden on the objective component of the *Hudson* test; he has failed to provide evidence of an act in violation of contemporary standards of decency. *See Conklin v. Hale*, 680 F. App'x 120, 123 (3d Cir. 2017) (upholding district court's determination that no Eighth Amendment violation occurred where the "evidence support[ed] the District Court's finding that [defendant] applied force in a good faith manner to subdue [plaintiff], not maliciously to hurt him," when the defendant put plaintiff in a headlock and "administered two fist jabs"); *Ellis v. Catalano*, No. 16-cv-8452 (KMK), 2020 WL 1956963, at *10 (S.D.N.Y. Apr. 23, 2020) (dismissing excessive force claims where "undisputed evidence establishe[d] that [correctional officers] used limited force to gain control of a physically violent inmate"); *Mason v. Rich*, No. 3:10-cv-397 (JBA), 2011 WL 4345025, at *3 (D. Conn. Sept. 15, 2011) (dismissing a claim of excessive force where correctional officer tackled inmate in the recreation yard who "refused to

comply with orders to stop fighting" because the correctional officer's "use of force was reasonable in light of the continued fighting and danger to the other inmate").

Even if Mr. Conley had shown that the use of force violated the contemporary standards of decency, his claim still would fail on the subjective prong. "The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 269 (citations and internal marks omitted). The "wantonness issue turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting Hudson, 503 U.S. at 7); *see also Olutosin v. Lee*, 2018 WL 4954107, at *12 (S.D.N.Y. Oct. 12, 2018) ("To determine whether Defendants acted maliciously or wantonly, a court must examine several factors including the extent of the injury or the mental state of the Defendant, as well as the need for the application of the force; the correlation between that need and the amount of the force used; the threat reasonably perceived by the Defendants, and any efforts made by the Defendants to temper the severity of a forceful response." (internal quotation marks omitted)).

There is no record evidence to support the notion that Officer Brysgel failed to act "in a good-faith effort to maintain or restore discipline," and instead acted "maliciously and sadistically to cause harm." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003). Indeed, Mr. Conley argues that instead of putting him on the ground, Officer Brysgel should have instead put him against the wall and that Officer Brysgel knew he would cause harm because Mr. Conley's hands were handcuffed behind his back. Pl.'s Mem. at 6–7. In other words, Mr. Conley is not arguing that Officer Brysgel should not have used force at all, but rather that he should have used

force differently, undercutting, if not undermining, any argument that Officer Brysgel's use of

force was not "a good-faith effort to maintain or restore discipline."

In any event, the videotape footage shows that Mr. Conley had been facing Officer

Brysgel (and Mr. Hayes, the victim of his assault) and not the wall, when Officer Brygel

approached him. Thus, by not facing the wall and being in or moving in the same direction as the

inmate that he had harmed, Mr. Conley limited Officer Brysgel's options. Mr. Conley thus has

failed to create a genuine issue of fact that Officer Brysgel acted "maliciously and sadistically to

cause harm." *See. e.g. Wright*, 554 F.3d at 269-70 (affirming dismissal of an excessive force

claim where correctional officer grabbed inmate for a short period of time); *Jones v. Diaz*, 2011

WL 1202024, at *4 (S.D.N.Y. Mar. 23, 2011)  ("In light of [plaintiff's] refusal to obey the

legitimate directions of the correctional officers, which culminated in the officers' brief use of

force to carry out a search for weapons and contraband, the Court concludes as a matter of law

that the [ ] defendants did not act with the malice and wantonness required to constitute an

Eighth Amendment violation." (citing *Hudson*, 503 U.S. at 6–7)); *Berry v. City of N.Y. Dep't of

Corrs.*, 2014 WL 2158518, at *5 (S.D.N.Y. May 22, 2014) ("However, if the force was 'applied

in a good-faith effort to maintain or restore discipline, it is unlikely to be repugnant to the

conscience of mankind, and will not amount to excessive force under Second Circuit law.'"

(quoting *Adilovic v. Cty. of Westchester*, No. 08 Civ. 10871 (PGG), 2011 WL 2893101, at *6

n.12 (S.D.N.Y. July 14, 2011)).[2]

---

[2] Although Mr. Conley argues that his complaints to Captain Black before this incident show that Officer Brysgel intended not only to harm him, but also to do so "maliciously and sadistically," Pl.'s Mem. at 7–8, there is no record evidence to support this argument. Indeed, the videotape clearly shows that Officer Brysgel's intervention into Mr. Conley's beating of Mr. Hayes was necessary. Video Footage at 11:40. And without admissible evidence in the record to support Mr. Conley's contention that Officer Brysgel did not need to intervene to stop the beating of Mr. Hayes, there is no genuine issue of fact to support this argument. *Quoka v. W. Haven*, 64 F. App'x 830, 832 (2d Cir. May 22, 2003) ("Furthermore, only admissible evidence may be considered in a ruling on a motion for summary judgment." (citing *Sarno v. Douglas Elliman-Gibbons & Ives*, 183 F.3d 155, 160 (2d Cir. 1999)); *Raskin v. Wyatt*

Accordingly, Defendants' motion for summary judgment on Mr. Conley's excessive force claim will be granted.

### B.     The Failure to Protect Claim

"In the Second Circuit, claims of failure to protect are a subset of Eighth Amendment prison-condition claims, and are subject to the same analysis requiring demonstration of both the objective and subjective components of an Eighth Amendment claim." *Colman v. Vasquez*, 142 F. Supp. 2d 226, 237 (D. Conn. 2011) (citing *Dawes v. Walker*, 239 F.3d 489, 494 n.3 (2d Cir. 2001), *abrogated on other grounds by Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16 (2d Cir. 2015).

To establish an Eighth Amendment violation for either failure to protect or deliberate indifference to safety, an incarcerated plaintiff first must show "that he is incarcerated under conditions posing a substantial risk of serious harm," and second, that the prison official had a "sufficiently culpable state of mind[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted). To demonstrate deliberate indifference, the plaintiff must show that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety," which means that the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, the "deliberate indifference standard embodies both an objective and subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *see also Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

---

*Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("The principles governing the admissibility of evidence do not change on a motion for summary judgment. Rule 56(e) provides that affidavits in support of and against summary judgment 'shall set forth such facts as would be *admissible in evidence*.'" (emphasis in the original) (quoting Fed. R. Civ. P. 56(e)).

"[A] supervisor . . . can be held liable under § 1983 for an underlying constitutional violation" if one of five allegations occurs. *Hamilton v. Lajoie*, 660 F. Supp. 2d 261, 266 (D. Conn. 2009). Specifically,

> (1) [A]ctual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

Captain Black argues that his personal relationship with Officer Brysgel justified his belief "that Officer Brysgel would [not] engage in threatening, harassing, or other unprofessional behavior toward [Mr. Conley] or any other inmate." Defs.' Mem. at 17. In his view, "[t]o the extent [Mr. Conley] claims he was being harassed by Officer Brysgel prior to this incident, his claim is unfounded." *Id.*

Mr. Conley responds "that had [Captain] Black acted upon the complaints made by [Mr. Conley] before the September 26, 2016 altercation, that [Officer] Brysgel would not have been around to put his hands on [Mr. Conley]." Pl.'s Mem. at 8. In his view, Captain Black's failure to act on any of the reports and indifference to Mr. Conley's claims, left Mr. Conley "open to the type of behavior which [led] to his injuries." *Id.* And Captain Black's actions, or failure to act, should be presented to a jury. *Id.*

The Court disagrees.

As the Court has already determined that Mr. Conley's excessive force claim against Officer Brysgel will be dismissed, Mr. Conley's claim against Captain Black for failing to protect him from this use of force also must fail. *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir.

1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation."). Captain Black is not liable merely because he was Officer Brysgel's supervisor. *Baylock v. Borden*, 547 F. Supp. 2d 305, 313 (S.D.N.Y. Apr. 16, 2008) ("[Defendant's] status as [a] supervisor does not, by itself, provide grounds for liability.").

And there is no record evidence suggesting that Captain Black knew of and disregarded a potential threat to Mr. Conley's safety. While Mr. Conley relies on the grievances he submitted to create a genuine issue of material fact, a failure to investigate does not, as a matter of course, rise to a constitutional violation. *See Ziemba v. Lynch*, No. 3:11-cv-974 (SRU), 2013 WL 5232543, at *7 (D. Conn. Sept. 17, 2013) ("Furthermore, the law is well established, that 'a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim.' Thus, a supervisory official's mere receipt of a letter or grievance complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official." (internal citations omitted)); *see also Jones*, 2011 WL 1202024, at *3 ("The fact that the [ ] defendants could have taken additional precautions to prevent the altercation is insufficient to prove deliberate indifference, a level of culpability higher than mere negligence[.]" (citing *Morales*, 842 F.2d at 30)).

In any event, Mr. Conley provided copies of inmate request forms to Captain Black regarding Officer Brysgel's behavior. *See* Suppl. Exs., ECF No. 111 at 7–13 (May 15, 2020). The forms are dated August 1, 2016; September 15, 2016; and September 27, 2016. The form dated September 15, 2016 refers to a conversation about Mr. Conley's concerns. *Id.* at 10. The inmate request forms are vague and generalized, and fail to establish a connection between the alleged harassment and the subsequent restraint by Officer Brysgel, such that any unnecessary use of force by Officer Brysgel could have been anticipated by Captain Black.

Even if Captain Black should have done more, at most, his failure to do so only would be negligent. *See Rangolan v. Cty. of Nassau*, 217 F.3d 77, 79 (2d Cir. 2000) (finding that testimony "and the absence of any evidence of substance contradicting it" of an official's failure to notice an entry on a housing form "warning against housing" with the plaintiff was not deliberate indifference nor an Eighth Amendment violation).

Lastly, a failure to protect claim is usually construed as a failure to protect inmates from other inmates. *See Farmer*, 511 U.S. at 838 (recognizing lower courts have uniformly found that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners" (alteration in the original) (citation omitted)); *Wilkerson v. Johnson*, 330 F. App'x 257 (2d Cir. 2009); *Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997) (finding a genuine issue of material fact existed where plaintiff alleged corrections officers had intentionally left an inmate's cell door unlocked) *Torres v. McGrath*, 2017 WL 3262162, at *5 (D. Conn. July 31, 2017) (plaintiff stated a plausible claim for deliberate indifference where plaintiff wrote correctional officer numerous letters over concern for his safety after renouncing a prison gang); *Muhmmaud v. Murphy*, No. 3:08-cv-1199 (VLB), 2009 WL 4041404, at *7 (D. Conn. Nov. 19, 2009) (the duty to protect includes "protecting inmates from harm at the hands of other inmates (citing *Farmer*, 511 U.S. at 832)); *see id.* ("For example, correctional staff would be on notice of a substantial risk of serious harm where there has been prior hostility between inmates, or a prior assault by one inmate or another, and those inmates are not kept separated.").

While "[p]rison officials can be held liable under 42 U.S.C. § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force," that is not the allegation here. *Randolph v. Griffin*, -- F.

App'x --, 2020 WL 2846649, at *2 (2d Cir. June 2, 2020). Captain Black is not alleged to have witnessed the attack, but arrived after the fact. Pl.'s SMF ¶ 35 (admitting).

Accordingly, Defendants' motion for summary judgment on Mr. Conley's failure to protect claim will be granted.

### C.    Qualified Immunity

Even if either Mr. Conley's excessive force claim against Officer Brysgel or his failure to protect claim against Captain Black were not dismissed, this Court would apply qualified immunity to these claims, resulting in their dismissal.

Qualified immunity protects government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Reichle v. Howards*, 566 U.S. 658, 644 (2012); *see also Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) ("Qualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." (internal quotation marks omitted)). It "is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012).

When analyzing a claim of qualified immunity under 42 U.S.C. § 1983, the Court must consider two questions. First, whether the defendant did in fact violate a constitutional right, and second, whether the contours of that right were "sufficiently clear that a reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 314–15 (2016) (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). The district court has the discretion to determine, in light of the particular

circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. *Johnson v. Perrty*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

"Summary judgment may also be available when, even though plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the action complained of, it was nonetheless 'objectively reasonable' for the defendant official 'to believe that his acts did not violate those rights.'" *Rodriguez v. Phillips*, 55 F.3d 470, 475 (2d Cir. 1995) (quoting *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)).

For qualified immunity to be inapplicable, the Court must find the contours of the right "sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that he was violating it, meaning that the existing precedent . . . placed the statutory or constitutional questions beyond debate." *City & Cty. of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Although the Supreme Court does not require that the exact actions have previously been held unconstitutional, the right must be established with more than a "high level of generality[,] . . . the violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308 (internal quotation marks and citations omitted); *see also City of Escondido, Cal. v. Emmons*, 149 S. Ct. 500, 501 (2019) (finding "the clearly established right must be defined with specificity" and the "right to be free of excessive force" is too general).[3] Defendants argue that they "acted reasonably and professionally and did not take any action with any intent

---

[3] As one court in this District has noted: "Because a plaintiff alleging an excessive force claim under the Eighth Amendment need not demonstrate a more-than-de-minimis injury, it necessarily follows that there is no basis to conclude that a Fourth Amendment claim for excessive force requires proof of more than a de minimis injury" because "the Supreme Court has otherwise made clear that the governing standard under the Eighth Amendment is even less protective of a plaintiff than the standard under the Fourth Amendment." *Jackson on Behalf of Z.J. v. City of Middletown*, No. 3:11-cv-00725 (JAM), 2017 WL 2218304, at *4 (D. Conn. May 19, 2017) (internal quotation marks omitted) (citing *Graham v. Connor*, 490 U.S. 386, 398 (1989)).

to cause harm to the plaintiff." Defs.' Mem. at 8–9. They intended to stop "[Conley's] violent and unprovoked assault of another inmate." *Id.* at 9. Because "a reasonable correctional official in [] Officer Brysgel's position at the time could have believed that his actions were objectively lawful," they argue Officer Brysgel is entitled to qualified immunity. *Id.* Defendants continue that "there is absolutely no evidence that [Conley] required . . . protection." *Id.*

Mr. Conley argues that "Defendants have failed to provide any evidence to show that there could be no doubt that the defendants were entitled to qualified immunity and that excessive force was not used." Pl.'s Opp'n at 6. In his view, "by the time [Officer] Brysgel put his hands on [him], the threat was gone and [Mr. Conley] was already at a stable surface in which he could be secured." *Id.* Furthermore, because Mr. Conley's hands were handcuffed behind his back, "[t]here could be no doubt if [he] fell at that point, he could sustain a serious injury when hitting the floor." *Id.* In his view, Officer Brysgel is "asking the [C]ourt to find that a reasonable officer would find it okay to tackle a handcuffed inmate who has no means to protect himself." *Id.* With respect to Captain Black, Mr. Conley argues that "whether [Captain] Black did enough, or failed to do anything, to protect [Mr. Conley] should be presented to the jury" because, in his view, "[t]here was clearly a missed opportunity to protect the plaintiff and to ensure his safety." *Id.*

The Court disagrees.

Even if there was sufficient evidence to create genuine issues of material fact as to Mr. Conley's excessive force and failure to protect claims, both Officer Brysgel and Captain Black would be entitled to qualified immunity.

### 1.   Officer Brysgel

The Supreme Court has held "that 'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). The right of a plaintiff must be defined more specifically than the "right to be free of excessive force." *City of Escondido*, 139 S. Ct. at 503.

And if Officer Brysgel had an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity. *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("So long as a defendant 'has an objectively reasonable belief that his actions are lawful,' he 'is entitled to qualified immunity.'" (quoting *Swartz v. Isogna*, 704 F.3d 105, 109 (2d Cir. 2013)). That is the case here.

While Mr. Conley argues that Officer Brysgel had another choice, to put him against the wall, rather than putting him to the ground, given the fast-moving nature of this incident, lasting less than thirty seconds, there is nothing in this record to suggest that Officer Brysgel's actions were unreasonable. Indeed, the record evidence, mainly the videotape footage, suggests that Officer Brysgel had to act and stop Mr. Conley from continuing to attack another inmate. Given Officer Brysgel's limited options, either putting Mr. Conley on the ground or putting him against the wall, Mr. Conley has failed to show that Officer Brysgel's decision to choose the former rather than the latter violated clearly established law. *See Reed v. Roberts*, No. 3-18-cv-809 (KAD), 2020 WL 584355, at *6 n.5 (D. Conn. Feb. 6, 2020) (recognizing that "even if it were determined that the chemical agent was not necessary to restoring order, the circumstances depicted on the video make it clear that it would have been objectively reasonable for Lieutenant

Wojcik to believe his use of the chemical agent did not violate a clear constitutional right and he would be entitled to qualified immunity.").

Accordingly, even if Mr. Conley's excessive force claim was not otherwise dismissed, Officer Brysgel would be entitled to qualified immunity and this claim's dismissal on that basis.

### 2.  Captain Black

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (internal quotation marks omitted); *see also Fischl*, 128 F.3d at 55 ("The Eighth Amendment . . . imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners." (internal quotation marks omitted)). Furthermore, "an officer 'cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." *Shannon v. Venettozzi*, 749 F. App'x 10, 13 (2d Cir. 2018) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)). Negligence is insufficient for a failure to protect claim. *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996).

If Captain Black had an objectively reasonable belief that his actions were lawful, he is entitled to qualified immunity. *Sheehan*, 135 S. Ct. at 1774 (requiring that law be "sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that he was violating it, meaning that the existing precedent . . . placed the statutory or constitutional questions beyond debate" (internal quotation marks omitted) (quoting *al-Kidd*, 563 U.S. at 741)).

As discussed above, there is no clearly established law that Captain Black needed to take any more action than he did, given the vague and generalized grievances submitted by Mr. Conley. Also, as discussed above, there is no clearly established law that Officer Brysgel acted

inappropriately by putting Mr. Conley on the ground, thereby undermining any viable claim against Captain Black.

Accordingly, for all of these reasons, even if Mr. Conley's failure to protect claim against Captain Black was not otherwise dismissed, Captain Black would be entitled to qualified immunity and its dismissal on that basis.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED.**

The Clerk of the Court is respectfully requested to enter judgment and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of July, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE